IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUSIE WARD, | § | |
|       Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | **Civil No. 3:11-CV-762-L-BK** |
| CNH AMERICA, LLC, IND., & CASE | § | |
| NEW HOLLAND AMERICA, LLC, & | § | |
| SUN LIFE ASSURANCE CO. OF | § | |
| CANADA, | § | |
|       Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Court's *Order of Reference* (Doc. 49), this cause is before the

undersigned for recommendation on Defendants CNH America, LLC & Case New Holland

America's (CNH) motion for summary judgment (Doc. 14), Plaintiff's motion for summary

judgment (Doc. 18), Defendant Sun Life Assurance Co. of Canada's (Sun Life) motion to

dismiss and for summary judgment (Doc. 21), and Plaintiff's *Motion for Leave to File*

*Supplemental Pleading* (Doc. 36).  After reviewing the pleadings and applicable law, the Court

recommends that Defendants' motions for summary judgment (Docs. 14, 21) be GRANTED,

Plaintiff's motion for summary judgment (Doc. 18) be DENIED, and Plaintiff's *Motion for*

*Leave to File Supplemental Pleading* (Doc. 36) be DENIED.

## I. BACKGROUND

Plaintiff was an employee of Defendant CNH's predecessor companies from 1965 to

1994.  (Doc. 16 at 13).  In 1994, Plaintiff took out Optional Dependent Group Term Life

Insurance on her then husband, Bobby Shewmake.  (*Id*. at 14).  In 1997, Plaintiff and her

husband divorced.  (Doc. 20-4 at 35).  Plaintiff avers that, after she and her husband divorced in

1997, she notified CNH of that fact and a CNH employee told her to continue to make the

payments on Mr. Shewmake's life insurance, stating that "she [the CNH employee] would take

care of everything."  (Doc. 31-1 at 3).  On November 16, 2009, Mr. Shewmake died and, on

December 29, 2009, Plaintiff signed the Death Benefits Claim Packet prepared by CNH, which

was subsequently submitted to the underwriter of Plaintiff's insurance plan, Sun Life.  (Doc. 20-2

at 35-39).  At the time of Mr. Shewmake's death, the Sun Life plan ["The Plan"] had been in

effect since 2006.  (Docs. 29 at 15-16; 32 at 6).

On December 31, 2009, Sun Life denied Plaintiff's claim because Shewmake was "not an

eligible Dependent" under the policy since he "was not [Plaintiff's] spouse at the time of his

death."  (Doc. 20-2 at 30).  On February 17, 2010, Sun Life again notified Plaintiff that the claim

was denied, stating "dependent coverage on Mr. Shewmake also ceased on" the date of the

divorce.  *Id*. at 20.

On March 21, 2011, Plaintiff filed suit against Defendants in state court alleging

violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code, common law

fraud, and negligent misrepresentation.  (Doc. 2 at 14-16).  Plaintiff seeks to recover the plan

benefits, as well as "multiple" and "exemplary" damages because Defendants allegedly made

false statements and failed to provide certain documents.  (Doc. 2 at 14-17).   On April 14, 2011,

Defendants removed the case to this Court, contending Plaintiff's state law causes of action are

preempted by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §

1001 *et seq*.  (Doc. 2 at 1-6).  Defendants also argue removal was proper under the Court's

diversity jurisdiction.  *Id*. at 6.  After the conclusion of the discovery period, all parties filed

motions for summary judgment which are now ripe for determination.

## II.  APPLICABLE LAW and ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Id.*  However, Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the responding party's opposition to the motion for summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458.

ERISA governs

In their respective motions, Defendants assert that they should be granted summary judgment because Plaintiff's state law claims are preempted by ERISA.  (Docs. 21 at 11-20; 17 at 4-8).  In her response and cross motion for summary judgment, Plaintiff argues that her state law claims are not governed by ERISA because The Plan falls within ERISA's "safe harbor provision" and, thus, is not subject to ERISA preemption.  (Docs. 19 at 5-7; 31 at 13-15).

Under ERISA, any plan, fund, or program established or maintained by an employer for the purpose of providing benefits in the event of death to its participants or their beneficiaries

3

(whether through the purchase of insurance or otherwise) is an "employee welfare benefit plan." 29 U.S.C. § 1002(1).   Under ERISA's "safe harbor" exclusion, however, a plan is not governed by ERISA if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; <u>and</u> (4) the employer received no profit from the plan.   29 C.F.R. § 2510.3-1(j)(1)-(4); *Meredith*, 980 F.2d at 355.

A review of the evidence and applicable law conclusively establishes that The Plan at issue in this case does not fall within ERISA's "safe harbor" exclusion.[1]  Plaintiff asserts that her employer did not contribute to the plan because she paid the premiums for the Optional Dependent Group Term Life Insurance.   (Doc. 31 at 14-15).   Plaintiff's position is unsupported, however.   ERISA's safe harbor provision does not apply when the employer contributes to an overall plan containing the policy at issue, as is the case here.   It is inconsequential that Plaintiff's employer did not contribute to the Optional Dependent Group Term Life Insurance in particular.   *See McNeil v. Time Ins, Co*, 205 F.3d 179, 190 (5th Cir. 2000) (holding that ERISA's safe harbor exclusion did not apply where employer paid premiums for one employee policy but not a co-owner's policy under the same plan).   As a sister court of this circuit held, the safe harbor provision was not intended to "exempt from ERISA coverage the commonplace situation where dependant [*sic*] coverage is paid for by plan participants…[and] dependant [*sic*] coverage

---

[1]  In  response to the Defendants' motions for summary judgment, Plaintiff  contends that the affidavit of Thomas Cogen, CNH's Director of Employee Benefits, should be stricken because it is self-serving and not the best evidence, which she argues is the actual policy.  (Doc. 31 at 6).  Defendants have produced the policy referred to by Cogen's affidavit, however.  Moreover, the Court finds the averments contained in Cogen's affidavit to be both relevant and reliable.  Thus, Plaintiff's request to strike the Cogen affidavit should be DENIED.

cannot be severed from the remainder of the life benefits package." *Armstrong v. Columbia/HCA HeathCare Corp.*, 122 F.Supp. 2d 739, 743 (S.D. Tex. 2000) (citations omitted). So is the case here, where CNH paid all premiums for Plaintiff's Basic Life, Dependent Basic Life, and Survivor Income Benefit Insurance under The Plan, and Plaintiff paid the premiums for the Optional Dependent Group Term Life Insurance.  (Docs. 24 at 1l; 25 at 16).

There is also other evidence that the Optional Dependent Group Term Life Insurance was part of The Plan: (1) Plaintiff had to be enrolled in the employer-funded Basic Life Insurance under The Plan to be eligible to participate in the Optional Dependent Group Term Life Insurance; (2) the different types of insurance policies under The Plan were contained in a single plan document and under the same policy number – for Plaintiff, policy number 63354; (3) all policies under The Plan were subject to the same effective date, anniversary date, amendment date, termination provisions, and claims provisions; and (4) all policies were administered by CNH and underwritten by Sun Life.  (Docs. 23 at 6, 17; 25 at 12-16).

Moreover, CNH's role was not limited to collecting premiums and remitting them to the insurer. *See* 29 C.F.R. § 2510.3-1(j)(1)-(4); *Meredith*, 980 F.2d at 355.  CNH maintained a benefits department that assisted participants with understanding the plan and submitting claims, gathered information for Sun Life, and coordinated CNH's open enrollment period for the plan. (Docs. 16 at 14-15; 29 at 155-56).   Indeed, CNH submitted the claim on Plaintiff's behalf for death benefits following Mr. Shewmake's demise.  (Docs. 20-2 at 35-39; 29 at 15).

Accordingly, the Court finds the summary judgment evidence establishes that at least two of the four required elements of ERISA's "safe harbor" exclusion are not met in this case.  Thus, The Plan, including the policy at issue here, does not fall within ERISA's "safe harbor" exclusion

and is governed by ERISA.

State law claims preempted

There are two types of ERISA preemption: complete preemption and conflict preemption. *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002). When determining if a cause of action is preempted by ERISA, the Court looks to the relief sought rather than the cause of action. *McGowin v. ManPower Intern., Inc.*, 363 F.3d 556, 559 (5th Cir. 2004). Under ERISA, plaintiffs are provided a civil enforcement cause of action, which "completely preempts any state law cause of action seeking the same relief, regardless of how artfully pleaded as a state law claim." *Id.* (citation omitted); s*ee also* 29 U.S.C. § 1132.

On the other hand, conflict preemption exists when a state law or claim "relates to" ERISA plans, unless the state law regulates insurance. *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 275 (5th Cir. 2004); *Lee v. E.I Dupont de Nemours and Co.*, 894 F.2d 755, 756 (5th Cir. 1990) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47 (1987)).

> ERISA's preemption of state law claims is extensive. [The Court of Appeals for the Fifth Circuit has] held that § 1144(a) preempts a state law claim if that claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and if that claim directly affects the relationship between traditional ERISA entities.

*McNeil*, 205 F.3d at 191.

"For purposes of ERISA preemption, the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA." *Bank of Louisiana v. Aetna U.S. Heathcare Inc.*, 468 F.3d at 237, 243 (5th Cir. 2006). "The critical determination is whether the claim itself created a relationship between the plaintiff and

6

defendant that is so intertwined with an ERISA plan that it cannot be separated." *Id*.

In the case *sub judice*, Plaintiff brings state claims for violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code, common law fraud, and negligent misrepresentation in an effort to obtain life insurance benefits she contends were wrongly denied. Plaintiff also seeks "multiple" and "exemplary" damages because Defendants allegedly made false statements and failed to provide certain documents. (Doc. 2 at 14-17). To the extent that Plaintiff's state law claims speak to her rights to receive benefits under The Plan, such claims are completely preempted by ERISA. *McGowin*, 363 F.3d at 559; 29 U.S.C. § 1132(a)(1)(B). Moreover, to the extent Plaintiff's claims seek relief for Defendants' alleged failure to provide her with plan documents, those claims are also completely preempted by ERISA. *See* 29 U.S.C. § 1132(a)(1)(A (providing a cause of action to a participant or beneficiary for relief provided in 1132(c)); 1132(c) (setting forth penalties for failing to provide certain plan documents).

Plaintiff's claims based on Defendant CNH's alleged oral misrepresentation are also completely preempted. Plaintiff alleges that after she informed Defendant of her divorce, an unidentified representative of Defendant CNH told her to continue to "do what she had been doing, and making the payments, as she had been paying," despite the fact that her former husband was no longer covered under the plan. (Doc. 2 at 13). Plaintiff does not seek reimbursement of premiums she continued to pay under The Plan after her divorce based on the alleged misrepresentation, but instead seeks the benefits due under The Plan and additional damages for the denial of those benefits.

In any event, even if Plaintiff's claims based on CNH's alleged oral misrepresentations were not completely preempted, they are, nonetheless, subject to conflict preemption because the

7

claims address an issue of federal concern and affect the relationship between traditional ERISA entities. *McNeil*, 205 F.3d at 191. The evidence establishes that CNH was acting as claim administrator, rather than as Plaintiff's employer, at the time of the alleged misrepresentation which concerned the interpretation and administration of the plan. Therefore, Plaintiff's misrepresentation claim "intrude[s] into federal matters respecting the duties and standards of conduct for an ERISA plan administrator." *E.I. Dupont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008).

Finally, a decision here for either party will affect the obligations owed to the other under an ERISA plan and, therefore, affects an aspect of the parties' relationship that is governed by ERISA. *McNeil*, 205 F.3d at 191. The Court of Appeals for the Fifth Circuit has held that ERISA preempts state law claims that have the effect of orally modifying an ERISA benefit plan for participants who claim to have been misled. *Lee,* 894 F.2d at 757; *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1295 (5th Cir. 1989); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989)).

The Court finds that all of Plaintiff's claims are preempted by ERISA. Therefore, Defendants' motions for summary judgment should be GRANTED.

Plaintiff's incontestability claim

In her motion for summary judgment, Plaintiff argues she is entitled to summary judgment because Defendants are barred from contesting Plaintiff's claim based on the "incontestability" clause in the policy at issue. (Doc. 19 at 9-10). Defendant CNH responds that the incontestability clause does not apply to this case, and Sun Life avers that Plaintiff's argument is nothing more than a breach of contract claim she failed to plead. (Docs. 30 at 15-16;

8

32 at 10).  In addition, Defendants aver that Plaintiff's claim that Defendants violated the incontestability clause of the policy is also governed by ERISA.  (Docs. 30 at 15-16; 32 at 10).

The Court agrees that Plaintiff's argument is merely a breach of contract claim not pled by her.  Nonetheless, had Plaintiff pled breach of contract based on the Defendants' violation of the plan's incontestability clause, such a claim would be completely preempted by ERISA, as Plaintiff avers Defendants should be barred from denying her benefits.  *See Ellis*, 394 F.3d at 276 n. 34 (stating that the district court properly concluded that plaintiff's breach of contract claim for the recovery of benefits was completely preempted by ERISA).  Accordingly, Plaintiff's motion for summary judgment should be DENIED.

Motion to Amend

Plaintiff avers that in the event the Court finds that her state law claims are preempted by ERISA, the Court should grant her leave to file a supplemental complaint to, in essence, restate her claims under ERISA.  (Doc. 36 at 1).  Defendants aver that Plaintiff should not be granted leave to amend because: (1) the deadline to amend the pleadings in this case has expired; (2) Plaintiff has not demonstrated a valid explanation for waiting to this point to seek an amendment; (3) Defendants would be prejudiced by allowing the Plaintiff to amend at this late date; and (4) and any amendment would be futile.  (Docs. 41; 44).  Plaintiff replies, *inter alia*, that Defendants should not be "heard to complain" about Plaintiff's motion to amend since Defendants have argued ERISA preemption.  (Doc. 46 at 2).

The Court set a deadline of August 16, 2011, for the amendment of pleadings.  (Doc. 8). Accordingly, Plaintiff's motion to amend her pleadings, filed after that deadline, is governed by

Rule 16 of the Federal Rules of Civil Procedure.[2]  *S&W Enter., L.L.C. v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003).  Under Rule 16, a motion to amend may only be granted on a showing of "good cause and with the judge's consent."  FED. R. CIV. P. 16; *S&W Enter.,* 315 F.3d at 536.  The Court of Appeals for the Fifth Circuit has set out four factors for courts to consider in determining if good cause exists: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.  Based on these factors, as explained below, the Court recommends that Plaintiff's motion for leave to amend her complaint be DENIED.

The first factor weighs against Plaintiff, as she has not provided a reasonable explanation for her failure to timely move for leave to amend.  Plaintiff states that she moved to "amend as soon as it became apparent that the supplement might become necessary," arguing that the necessity to amend her claims does not arise until Defendants successfully prove that her claims are preempted.  (Doc. 36 at 4).  The Court disagrees, however.  Plaintiff was well aware of Defendants' contention that her claims were preempted by ERISA since before the case was removed to this Court.  Despite being fully cognizant of the facts upon which she now bases the ERISA claims in her proposed amended petition, Plaintiff inexplicably waited until <u>eight months</u> after ERISA preemption was first pled by Defendant, <u>seven months</u> after her suit was removed to this Court based on ERISA preemption, <u>six months</u> after the parties' conferred on the issue of

---

[2]   The two cases Plaintiff cites in support of her argument that she should be allowed to amend her pleadings to allege ERISA causes of action  (Doc. 46 at 2-4) are readily distinguished from the case at bar, as both were determined under Rule 15's less stringent standard because in each case the deadline to amend the pleadings had not yet passed.  *See Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 268 (5th Cir. 2004); *Admobbati v. Guardian Life Ins. Co. of Am.*, 2000 WL 554797 (5th Cir. 2000).

ERISA preemption, and <u>five</u> months after the Court's deadline to amend pleadings passed; it was not until the cross-motions for summary judgment on the issue of ERISA preemption had been completely briefed that Plaintiff finally sought leave to amend. (Docs. 2 at 2-6, 22, 26; 8; 44-1 at 2, 5, 8).   Moreover, without explanation, Plaintiff decided to forego the well-established practice of pleading alternative theories of recovery in the event the Court should determine the preemption issue in Defendants' favor.   FED R. CIV. P. 8(d)(2).   Accordingly, the Court finds that Plaintiff has not offered a reasonable explanation for her failure to seek to amend her complaint before the Court's deadline for doing so.

Furthermore, allowing Plaintiff to belatedly amend her complaint would most certainly prejudice Defendants.   In addition to the expense already incurred by Defendants to defend against Plaintiff's claims, including prosecuting motions for summary judgment and responding to Plaintiff's motion for summary judgment, going forward on an amended complaint would necessitate additional and avoidable costs, such as those for conducting additional discovery and again presenting dispositive motions to the Court.   *See Huskin v. Union Cent. Nat'l Group, Inc.*, 2011 WL 1765277 at *2 (N.D. Tex. 2011) (citing *In re Enron Corp.*, 2007 WL 207028, at *3 (S.D. Tex. 2007) (considering time and expense of preparing a motion to dismiss as prejudicial to opponent of an untimely motion for leave to amend)).   And a continuance would not cure such prejudice.

While the Court acknowledges the importance to Plaintiff of allowing leave to amend, it is outweighed by Plaintiff's lack of a reasonable explanation for the delay in seeking leave to amend and the potential prejudice to Defendants caused by allowing such amendment at this stage of the proceedings.   Thus, the Court recommends that Plaintiff's *Motion for Leave to File a*

*Supplemental Pleading* be DENIED.

### III.  CONCLUSION

For the reasons set forth herein, the Court **RECOMMENDS** that Defendants' motions for summary judgment (Docs. 14; 21) be **GRANTED**, that Plaintiff's motion for summary judgment (Doc. 18) and *Motion for Leave to File a Supplemental Pleading* (Doc. 36) be **DENIED**, and that this case be dismissed with prejudice.

SIGNED on June 7, 2012.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13